UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN EMERSON JONES,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-01635-JLT-CDB (SS)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 16)<br><br><u>14-Day Objection Period</u> |

Plaintiff Benjamin Emerson Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 11; hereinafter, "AR") and the parties' briefs (Docs. 16, 18), which were submitted without oral argument. Upon review of the record, the undersigned recommends Plaintiff's motion for summary judgment (Doc. 16) be granted.

I.      BACKGROUND

A.      Administrative Proceedings and ALJ's Decision

On September 29, 2020, Plaintiff filed an application under Title II of the Social Security Act, alleging disability beginning June 20, 2019. (AR 55, 199). Plaintiff's claim was denied initially on December 15, 2020, and again upon reconsideration on March 29, 2021. (AR 54-84). Plaintiff requested a hearing before an Administrative Law Judge on April 2, 2021. (AR 102).

Administrative Law Judge ("ALJ") Roxanne Fuller held a hearing on January 6, 2022, wherein Plaintiff, his attorney Nicholas Martinez, and impartial vocational expert ("VE") Sugi Komarov appeared. (AR 32). ALJ Fuller issued an unfavorable decision on January 26, 2022. (AR 15-25). The Appeals Council denied Plaintiff's request for review on October 21, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1-6). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a). (AR 16). The ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2020. (AR 17). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2019, the alleged onset date. (AR 17).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDIs") through the date last insured which significantly limit the ability to perform basic work activities: schizoaffective disorder of depressed type and anxiety. The ALJ also found that Plaintiff had the non-severe impairment of gastroesophageal reflux disease ("GERD"). (AR 18).

The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[1] The ALJ found moderate limitations in all four broad functional areas. (AR 18-19). Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found the "paragraph B" criteria were not satisfied. (AR 19).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20

---

[1] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

C.F.R. Part 404, Subpart P, Appendix 1.  (AR 18).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with non-exertional limitations to routine and repetitive tasks and low stress jobs, defined as having only occasional decision making and changes in work setting, no interaction with the public, and only occasional interaction with coworkers and supervisors.  (AR 19-20).   In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p.  (AR 20).  The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record.  (AR 20).  The ALJ, citing to Plaintiff's hearing testimony and the medical record, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 20-23).

At step four, the ALJ determined that Plaintiff has past relevant work, under 20 C.F.R. § 404.1565, that he could not perform.  (AR 23).  The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a marker, photocopying machine operator, and mail clerk.  (AR 24).  The ALJ concluded that Plaintiff had not been under a disability at any time from the alleged onset date through the date last insured.  (AR 25).

**B.      Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.      LEGAL STANDARD**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

4

is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id*. If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. Plaintiff raises two issues in his motion:

1.  The mental RFC ("MRFC") is not supported by substantial evidence; and

2.  The ALJ failed to provide clear and convincing reasons to reject Plaintiff's psychiatric symptomology. *See* (Doc. 16).

Though Plaintiff titles the first issue as relating to the MRFC, the arguments offered relate to whether substantial evidence supported the ALJ's rejection of medical opinions in the record. *See id.* at 16-23.

### A. Whether the ALJ Erred in Failing to Support the MRFC with Substantial Evidence Based on His Treatment of Medical Opinion Evidence

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*,

871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### i. Parties' Contentions

Plaintiff asserts that, at step two, the ALJ found Plaintiff suffered from "severe" MDI of "schizoaffective disorder, depressed type" through the date last insured. Plaintiff notes that the DSM-V sets forth that schizoaffective disorder is "characterized by delusions and hallucinations ∴." Plaintiff argues that, given the ALJ's finding thereto, the ALJ necessarily determined that there is evidence of a "more than minimal" impairment in Plaintiff's functioning due to delusions and hallucinations. Plaintiff argues that, therefore, it was inconsistent for the ALJ to make a related determination that were was no evidence of delusions and hallucinations during the relevant period, as the basis of the ALJ's rejection of the "only examining MRFC" opinion of psychologist Bradley Schuyler. (Doc. 16 at 16-21). Plaintiff separately argues that the ALJ erroneously mischaracterized the record evidence cited in support of the determination that Plaintiff did not show "evidence of delusions or hallucinations during the relevant period …" (*id.* at 22; citing AR 280-285, 288, 291, 320, 333, 341, 402) and cited to "repetitive medical evidence not reflecting treatment for psychiatric conditions outside the period at issue" (*id.* at 23; citing AR 287, 294, 320, 333, 341, 402).

Defendant notes that the state agency psychological consultants, Nadine Genece and E. Aquino-Caro, both found that Plaintiff had no more than moderate limitations caused by his mental impairments, which the ALJ found persuasive, though the ALJ found additional moderate limitations. (Doc. 18 at 8-9). Defendant also notes that Plaintiff's therapist frequently observed Plaintiff was neatly dressed, properly oriented, and made direct eye contact, and that Plaintiff told his therapist Andralyn Keys and physician Bradley Wajda that he was feeling "okay" or doing better. Plaintiff told Dr. Wajda his depression and anxiety were mild on September 22, 2020, which, Defendant asserts, evidences improvement and is consistent with the state psychological consultants' findings. *Id.* at 9-10.

Defendant argues that Dr. Schuyler's opinions of Plaintiff being psychotic and delusional were inconsistent with the record. In support, Defendant cites from the record statements made by Plaintiff to Ms. Keys and Dr. Wajda concerning his mental state and familial relationships, and Dr. Wajda making no findings of delusions or psychotic behavior while treating Plaintiff during the

8

relevant period.  Defendant also points out that Dr. Schuyler did not start treating Plaintiff until after the Plaintiff's date last insured.  *Id.* at 10-12.

### ii.  Analysis

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to perform routine, repetitive tasks; perform work in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting; no interaction with the public; and only occasional interaction with co-workers and supervisors.

(AR 19-20).

As a preliminary matter, Plaintiff neither contests nor acknowledges the ALJ's findings as to the opinions of the state agency psychological consultants, Nadine Genece and E. Aquino-Caro. *See* (Doc. 16).  Because Plaintiff offers no arguments opposing the ALJ's findings in this regard, and as the ALJ provided limitations in the RFC beyond what the state agency psychological consultants opined, the Court will not address the ALJ's findings as to the opinions of the state agency psychological consultants.  (AR 22).

### 1.  Dr. Schuyler's Opinions

Psychologist Bradley Schuyler provided a mental residual functional capacity questionnaire.  (AR 372).  He sets forth that Plaintiff has schizoaffective disorder, depressive type, as well as a unspecified personality disorder, with a "poor" prognosis, and indication that Plaintiff "refuses to take medication."  He notes that Plaintiff's mental abilities of understanding and memory do not preclude performance of any aspect of a job.  (AR 372).  Regarding concentration and memory, he indicates that Plaintiff can carry out "very short and simple instructions" but is otherwise precluded for 15% or more of an 8-hour workday, the highest the form permits, adding the notation "DK" next to each subcategory.  In explanation, he writes that Plaintiff is "psychotic + delusional."  He indicates the same level of preclusion with the same explanation for the social interaction category.  His response is largely the same for the adaptation category, except by noting

that Plaintiff is not precluded regarding awareness of normal hazards and appropriate precautions. (AR 373). He indicates that Plaintiff is likely to be absent from work for five or more days per month, and will be unlikely to complete an 8-hour workday for five or more days per month, as a result of his medical issues. (AR 374).

Dr. Schuyler also provided a "Schizophrenia Spectrum and Other Psychotic Mental Disorders Professional Source Data Sheet." (AR 375). Therein, he indicates the same diagnosis as above and that Plaintiff will not take medication. (AR 376). He notes that Plaintiff has delusions or hallucinations and disorganized thinking. Regarding limitations, Dr. Schuyler indicated that Plaintiff had moderate limitations in understanding, remembering, or applying information, and extreme limitations in the other three functional areas. (AR 377-379). He noted that Plaintiff was "markedly limited" in a significant number of specific subcategories under the four broad functional areas. (AR 379-380).

### 2. ALJ's Findings

The ALJ found the opinion of Dr. Schuyler in the questionnaire unpersuasive, noting that the opinion was supported by Dr. Schuyler's explanations but was inconsistent with the medical evidence that showed Plaintiff had problems with anxiety and depression, was tearful or agitated, but also had a normal mood and normal behavior, and was calm, alert, and oriented, with the record showing no evidence of delusions or hallucinations during the period at issue. The ALJ concluded that Plaintiff had moderate limitations in all four areas of the "paragraph B" criteria that were captured by the RFC. (AR 22; citing AR 280-285, 288, 291, 320, 333, 341, 402). Regarding the data sheet statement from Dr. Schuyler, the ALJ found the opinions therein unpersuasive, noting that though the statement was supported by the "explanation that the [Plaintiff] was psychotic and delusional," it was inconsistent with the medical evidence, under the same analysis as regarding Dr. Schuyler's other opinions as noted above. *Id.*

The ALJ cites a medical record for an appointment regarding rectal fissures and hemorrhoids. (AR 320, 402). Though evidencing a normal mood and normal behavior under a section labeled "Psychiatric," Plaintiff is correct (Doc. 16 at 23) that the record does not concern a visit regarding Plaintiff's mental health and does not provide any detail as to the findings relating

10

to his mood and behavior.  *See* (AR 318-320).  Thus, this record does not support the ALJ's findings.  However, a review of the ALJ's other citations to the record concerning appointments with Ms. Keys and Dr. Wajda, as well as accompanying records not cited by the ALJ, supports the ALJ's findings and does not indicate "cherry-picking" or any selective citation to standalone records otherwise.  *See* (AR 280-294, 333, 341, 376).

Plaintiff cites to *Reeves v. Saul* in support of the contention that the ALJ's determination that there was "no evidence of delusions or hallucinations" as the basis of her rejection of Dr. Schuyler's opinions "is inconsistent with the ALJ's determination that [Plainitiff] suffered from a 'severe' MDI of 'schizoaffective disorder.'"  (Doc. 16 at 19; citing *Reeves v. Saul*, No. 2:18-cv-01174-GMN-EJY, 2020 WL 1557776, (D. Nev. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1549623 (Mar. 31, 2020)).  However, *Reeves* is distinguishable.  There, the court found that the ALJ's determination Plaintiff's depressive disorder was severe was "internally inconsistent with the ALJ's statement that Plaintiff's mental impairments cause no more than mild limitations, never mentioning Plaintiff's substantial reports to the contrary together with the consistent diagnosis that Plaintiff was severely depressed."  *Reeves*, 2020 WL 1557776, *13.  The *Reeves* court noted that the record showed Plaintiff was diagnosed as consistently severely depressed.  Additionally, the *Reeves* court noted that, despite the existence of this record evidence, the ALJ found that Plaintiff's impairments caused no more than mild limitations.  *Id*.

Here, by contrast, the ALJ evaluated the supportability and consistency requirements and cited evidence to support the finding that the record did not demonstrate forms of illness as disabling as Dr. Schuyler opined.  Further, the ALJ found moderate limitations in all four of the "paragraph B" criteria.

Plaintiff also cites a definition of schizoaffective disorder in support of the above.[2]  (Doc. 16 at 18).  However, the definition provided by the Plaintiff does not set forth that a diagnosis of schizoaffective disorder must include hallucinations or delusions.  The definition provides that the illness may include, for example, "[d]isorganized speech" and "[n]egative symptoms (i.e.,

---

[2] "Schizoaffective Disorder," National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK541012/#:~:text=The%20specific%20DSM%2D5%20criteria,episode%2 (last accessed February 21, 2026).

diminished emotional expression or avolition[])" where hallucinations and delusions are not present, as well as "[h]allucinations and delusions for two or more weeks *in the absence of* a major mood episode (manic or depressive) during the entire lifetime duration of the illness." *Id.* (emphasis added). Insofar as Plaintiff asserts that the definition of schizoaffective disorder requires the ALJ to find hallucinations or delusions when considering it a severe impairment, the definition proffered by Plaintiff does not support that argument.

Lastly, Plaintiff cites record evidence in support of the assertion that other medical records did support Plaintiff's "delusional persecutory thought process." *Id.* at 22. However, and as further discussed in subsection B(ii)(3) *infra*, Plaintiff's citations do not, in fact, evidence any clear indication of hallucinations or delusions.

Thus, because the ALJ properly considered the supportability and consistency of the medical opinion evidence, the ALJ's assessed MRFC which relied on these opinions is supported by substantial evidence.

## B. Whether the ALJ Failed to Provide Clear and Convincing Reasons to Reject Plaintiff's Psychiatric Symptomology Testimony

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

---

[3] SSR 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See, e.g., Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281); *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. App'x 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (noting that the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1)

13

ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)); accord *Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7; *see* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001); *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect

14

your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting *Carmickle*, 533 F.3d at 1161).

### i.  *Parties' Contentions*

Plaintiff asserts that the ALJ relied "heavily on what she mischaracterizes as a lack of objective findings," which cannot serve as the basis for rejecting symptomology.  (Doc. 16 at 25). Plaintiff cites medical evidence in support of the contention that the ALJ failed to properly characterize the record.  *Id.* at 26-27 (citing AR 282, 283, 286, 288-290, 291).  Plaintiff argues that the ALJ failed to discuss relevant portions of his symptom testimony, including testimony regarding inability to have minor or occasional interactions with others due to paranoia and his stopping working at his prior job due to anxiety and stress.  *Id.* at 28-31.

Defendant asserts that the ALJ summarized Plaintiff's subjective reports and analyzed them pursuant to applicable regulations.  Defendant argues that the medical evidence from Ms. Keys and Dr. Wajda supports the ALJ's findings.  (Doc. 18 at 14; citing AR 281-293, 341).  Defendant provides that the ALJ did, in fact, discuss Plaintiff's representations regarding paranoia and interpersonal difficulty and limited him to no interaction with the public and only occasional interaction with coworkers and supervisors.  *Id.* at 15.  Defendant further argues that the ALJ's discounting of Plaintiff's symptomology testimony properly was based in part on his finding that

15

Plaintiff's statements were inconsistent with evidence of his conservative, effective treatment. (Doc. 18 at 14).

### ii. Analysis

The ALJ summarized Plaintiff's subjective symptom testimony from the hearing. (AR 20-21). After finding that Plaintiff's impairments could reasonably be expected in light of the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the longitudinal treatment record. (AR 25); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why").

The ALJ summarized that Plaintiff testified to experiencing anxiety, paranoia issues with depression, panic attacks with an average of three a day, difficulty in getting along with others, as well as in completing tasks and concentrating. (AR 20). The ALJ found that the medical record failed to "show significant findings consistent with the degree of limitation." The ALJ observed that the record showed Plaintiff was diagnosed with schizoaffective disorder and anxiety disorder, and that he reported problems with anxiety, depression, and suicidal ideation, and had issues with irritability. (AR 20-21; citing 281, 286, 291, 293, 333, 341, 376). But the ALJ also noted that other record evidence showed Plaintiff "doing 'okay' and/or 'better' in multiple examinations" and reporting his anxiety and depression were mild in September 2020, as well as not having issues with suicidal ideation in various examinations. (AR 21; citing 280, 282, 283, 286, 288-291). The ALJ observed that the record "did not show evidence that the [Plaintiff] experienced homicidal ideation in examinations" or that he "had problems with hallucinations and/or delusions" during the relevant period, nor that Plaintiff "underwent in-patient psychiatric hospitalization during the period at issue." (AR 21; citing 294).

The ALJ also noted that the "medical evidence of record and the treatment plans by the [Plaintiff's] medical sources did not show impairments at such a limiting level as the claimant has alleged." The ALJ found that Plaintiff asserted "issues with concentration, problems with anxiety, issues with getting along with others, and issues with depression, and the medical record showed

that the claimant had mental impairments that could affect his ability" as to the four functional "paragraph B" criteria. The ALJ determined that the "record also showed that the claimant had a normal mood, had normal behavior, was alert and/or oriented and did not show that the claimant had issues with his memory during the relevant period." The ALJ concluded that the RFC "limited the [Plaintiff] to routine, repetitive tasks, limited him to a low stress job defined as having only occasional decision making required and only occasional changes in the work setting, limited his interactions co-workers and supervisors, and restricted his interaction with the public." (AR 21).

### 1. Summary of Symptom Testimony

Plaintiff contends that the ALJ "summarized [Plaintiff's] testimony vaguely." (Doc. 16 at 27-30; emphasis omitted); *see* (AR 36-53). In support of this assertion, Plaintiff includes in his motion a list of numerous quotations and references to the hearing testimony. *See* (Doc. 16 at 27-30). The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [Plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart*, 2023 WL 4162767, at *5. It follows that the ALJ is permitted to accurately summarize testimony when evaluating symptomology. However, the ALJ may not omit relevant testimony. Consistent with this principle, the ALJ cites to 20 C.F.R. 404.1529 and SSR 16-3P (AR 20), which provide: "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. *We will consider all of your statements about your symptoms*, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work." 20 C.F.R. 404.1529 (emphasis added); *see* SSR 16-3P ("Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing").

Plaintiff attested to sleep disruptions during the hearing. (AR 44-45). The ALJ, however, failed to discuss this symptom testimony in her decision. *See* (AR 20-21). Further, the ALJ stated that Plaintiff "averaged three panic attacks a day." (AR 20). However, the Plaintiff's testimony is, more accurately, that he averaged three panic attacks a day if he was at home and not in public.

17

Plaintiff also states that he has "panic attacks all the time" and while in public. (AR 43). The difference is material in that it suggests Plaintiff will have more than three panic attacks while in public.

Thus, the ALJ failed to abide by the regulatory provisions she cited in addressing the governing standard for weighing the evidence. Because there is no record that the ALJ considered or identified Plaintiff's testimony regarding sleep disturbances, and misstated Plaintiff's testimony in regards to panic attacks, the ALJ failed to meet the clear and convincing evidentiary standard. *See Burch*, 400 F.3d at 680 (holding an ALJ "must specify what testimony is not credible and identify the evidence that undermines" it).

### 2. Reliance on the Medical Record

Plaintiff contends that the ALJ relies significantly on lack of objective findings in the records, "which cannot by itself serve as the basis for rejecting symptomology." (Doc. 16 at 25). If the ALJ solely relied on lack of objective medical evidence to reject the relevant symptom testimony, such an analysis would not meet the relevant clear and convincing standard. *See Vertigan*, 260 F.3d at 1049; 20 C.F.R. § 404.1529(c)(2). However, the ALJ's citation to said records does not, by itself, suggest the ALJ relied only on objective medical evidence in discounting Plaintiff's credibility. The medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects" (*Rollins*, 261 F.3d at 857) and an ALJ properly may discount a plaintiff's symptomology testimony if she finds it is contradicted (not merely unsupported) by identified medical records. *Hairston*, 827 Fed. App'x at 773.

Where mental health concerns are at issue, the Ninth Circuit has explained that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while

18

being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* (citations omitted).

First, Plaintiff asserts that the September 2020 record relied upon in part by the ALJ is "outside the period at issue." (Doc. 16 at 26). The record, dated September 22, 2020, is signed by Dr. Wajda. (AR 280) and notes that Plaintiff's "dep and anx are mild [sic]," that he is continuing therapy, that he is "calm w/NAD [sic]," that Plaintiff gets "rather histrionic" and "morphs into discussing his dysfunctional relationship w/his parents [sic]," and lists medications Plaintiff is taking. *Id.* Plaintiff's alleged onset date is June 20, 2019, and the last insured date is December 31, 2020. (AR 54, 57, 70, 217). As such, contrary to Plaintiff's argument, the record dated September 22, 2020, falls within the relevant period.

Second, the ALJ cites to medical records to contradict some of the Plaintiff's testimony, for example, by finding that Plaintiff mentioned improvement regarding some of his symptoms to his medical providers, in that he was doing "okay" or "better" and did not have issues with suicidal ideation in multiple examinations, as well as reporting mild anxiety and depression in September 2020. (AR 21). The ALJ also found that the "medical evidence of record and the treatment plans by the [Plaintiff's] medical sources did not show impairments at such a limiting level as the claimant has alleged," as well as the record showing "that the [Plaintiff] had a normal mood, had normal behavior, was alert and/or oriented and did not show that the [Plaintiff] had issues with his memory during the relevant period." (AR 21).

As to the structure of the ALJ's explanation, however, it is difficult to connect the ALJ's summarization of identified medical records to the testimony for which it conceivably is inconsistent. In some instances, the ALJ's linkage of symptom testimony to evidence is clear, such as where the ALJ notes that Plaintiff has "problems with anxiety, depression and/or suicidal ideations" and, afterwards, states that Plaintiff "reported his anxiety and depression were 'mild'" and that he "did not have issues with suicidal ideations in various examinations." (AR 21). However, in other instances, it is unclear what testimony the ALJ is discounting by citation to evidence. For example, in a single sentence, the ALJ states that Plaintiff had "issues with concentration" and "issues with getting along with others," along with other symptoms. In the next

19

sentence, the ALJ stated that the record showed Plaintiff "had a normal mood, had normal behavior, was alert and/or oriented and did not show that the claimant had issues with his memory during the relevant period." (AR 21). It is unclear what testimony the ALJ is linking to discount the Plaintiff's symptom testimony regarding concentration issues or issues with getting along with others; general claims that Plaintiff "had a normal mood" and "normal behavior," by themselves, offer no clear connection to discount such symptom testimony. Nor does a lack of issues with memory necessarily indicate a lack of issues with concentration. Thus, the ALJ did not identify the testimony she found not credible and clearly link it to the portions of the record that supported her determination. *See Michael W. v. Bisignano*, No. 2:25-cv-00635-BFM, 2026 WL 166564, at *5 (C.D. Cal. Jan. 16, 2026) ("Here, however, the ALJ merely summarized portions of the medical records, concluded the medical record did not support an RFC more limited than the one he assessed, and provided a few data points.").

Third, even if the ALJ had properly linked the record evidence to the findings, the medical evidence cited by the ALJ in support of the findings discounting Plaintiff's symptom testimony does not meet the relevant clear and convincing standard. The ALJ cites the medical record to show improvement in some of Plaintiff's symptoms at select appointments. The ALJ also cites the Plaintiff's presentation at certain appointments. A review of the ALJ's citations to the record, as well as accompanying records not cited by the ALJ, does not indicate a consistent resolution of symptoms or notable and continuing improvement. Rather, the record evidence shows a waxing and waning of Plaintiff's symptoms. *See* (AR 280-294, 333, 341, 376).

For example, on August 16, 2019, Dr. Wajda reports an increase in depression. (AR 290). On November 12, 2019, Plaintiff reported that he is doing better (AR 284) and, on December 16, 2019, Plaintiff reported that he is doing "okay." (AR 282). Plaintiff reports doing "okay" or "better" in other appointments with Ms. Keys, as well, but without any detailed elaboration thereto. *See* (AR 283, 284, 286 291, 293). However, on March 17, 2020, Plaintiff reported that he is "emotionally exhausted," that therapy is "hit and miss," and is observed as "escalat[ing] to agitation." (AR 281). On September 22, 2020, Plaintiff reports mild anxiety and depression but "gets rather histrionic [regarding] describing how he uses [suicidal ideation] as a coping skill which

morphs into discussing his dysfunctional relationship with his parents," though no "active [suicidal ideation] is elicited." (AR 280).

The medical evidence does not evidence a consistent improvement or clear indication of resolution of Plaintiff's symptom testimony and the ALJ does not elaborate regarding the waxing and waning of Plaintiff's symptoms. Thus, the ALJ's citation to the medical record to discount Plaintiff's symptom testimony did not meet the applicable clear and convincing standard. *See Bo C. v. Comm'r of Soc. Sec.*, No. C22-5839-MLP, 2025 WL 1648761, at *4 (W.D. Wash. June 11, 2025) ("The ALJ also cites numerous 'normal' MSE findings as contradicting Plaintiff's testimony. … many of the records the ALJ cites as showing Plaintiff's 'normal' mental status also indicate continuing struggles with mental health symptoms. The Commissioner cites an April 2020 note as showing medication made Plaintiff 'essentially asymptomatic.' But this fails to account for the waxing and [waning] symptoms that are common in mental health issues.") (citation omitted); *cf. Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127 (E.D. Wash. 2022) (finding clear and convincing reasons where the plaintiff's presentation in treatment settings differed from her presentation in appointments related to seeking state assistance; several treatment records highlighted incongruence between her complaints and her presentation, such as a report of feeling tired while appearing energetic; and she had gaps in treatment which either plaintiff did not address or claims she had reason for the non-compliance but failed to offer appropriate reasoning) (citations omitted).

### 3. Hallucinations and Delusions

The ALJ notes that the record did not show that Plaintiff "had problems with hallucinations and/or delusions" during the relevant period. (AR 21). Such a statement does not offer any contradiction of testimony but, rather, provides merely that the record does not support "problems with hallucinations and/or delusions." By itself, this is an impermissible reason to reject symptom testimony. However, Plaintiff did not testify to symptoms indicating hallucinations or delusions during the hearing. *See* (AR 32-53). Plaintiff, in his motion, does not provide citations to the record in support of symptom testimony relating to hallucinations and delusions. *See* (Doc. 16 at 24-30). Though Plaintiff states "these records further detail Mr. Jones' persecution delusions of the 'ongoing cycle of verbal altercations' between him and his parents," the citations are to records

from counseling appointments with Ms. Keys. (Doc. 16 at 32; citing AR 282-83, 286, 291). There is no mention of "persecution delusions" in any of the cited records, nor any usage of the word "delusion" or "hallucination." Plaintiff appears to argue that the records, which evidence "verbal altercations" between Plaintiff and his parents, show "persecution delusions" arising from Plaintiff's relationship with his parents. However, the cited records present no such indication. Ms. Keys does not connect the "verbal altercations" with any notion of "delusion" or "hallucination."

Elsewhere in his motion, Plaintiff asserts without citation to the record that the ALJ "fails to explain the significance" of certain symptoms "given extensive documentation of [Plaintiff's] persecutory delusions and refusal to acknowledge his misperceptions of reality which are symptoms of his severe 'schizoaffective disorder' per the DSM-V." *Id.* at 27. However, Plaintiff does not provide any citation to support the existence of such "extensive documentation." As far as the Court can discern, Plaintiff appears to assert that he suffers from persecutory delusions merely because it is a symptom of schizoaffective disorder. Plaintiff fails to support any such contention by citation to the record.

The record contains notes from four appointments with Dr. Schuyler in 2021. (AR 382-397). Dr. Schuyler does not find evidence of hallucinations or other disturbances in perception but does note a suggestion of paranoid and delusional thought processes. *See* (AR 385, 389, 397). As the records date from 2021, they are outside the relevant period. Plaintiff does not cite to these records in support of his arguments regarding symptom testimony and the ALJ does not discuss them in the decision thereto.

"[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996) (citation and quotation omitted; alteration in original). As Plaintiff did not attest to experiencing hallucinations and delusions during the hearing and fails to provide supporting citations to the record that speak to his claim of hallucinatory and delusional symptom testimony during the relevant period, the ALJ did not err in this regard. Insofar as Plaintiff attempts to characterize verbal altercations and anxiety as fitting the definition of hallucinations and delusions

22

and as symptom testimony thereof, that argument is without any support from citations to authority or to the record.

### 4. Conservative Treatment

Additionally, the ALJ noted that Plaintiff never "underwent in-patient psychiatric hospitalization during the period at issue." (AR 21). Plaintiff contends that "psychiatric hospitalization is not a requirement to meet the definition of disability" and, therefore, it is not a "clear and convincing reason" to reject symptom testimony. (Doc. 16 at 27).

It is true that "[c]onservative treatment is [a] sufficient basis to discount a [plaintiff's] testimony regarding severity of an impairment." *Munoz v. Kijakazi*, No. 1:20-cv-01531-GSA, 2022 WL 837245, at *8 (E.D. Cal. Mar. 21, 2022) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)). However, the ALJ did not set forth any clear and convincing reasons to reject the symptom testimony based on conservative treatment. The ALJ merely stated that Plaintiff was never hospitalized for psychiatric reasons. This, by itself, is not a clear and convincing reason to reject symptom testimony. "A claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization." *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1217-18 (E.D. Cal. 2017) ("That plaintiff had not experienced psychiatric hospitalization is neither a clear and convincing nor specific and legitimate reason to discredit his testimony."); *see Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1280 (D. Or. 2020) ("When a plaintiff has received mental health treatment, courts often reject a lack of psychiatric hospitalization as a clear and convincing reason to reject a claimant's subjective symptom testimony.").

Thus, the ALJ committed error in relying on a lack of psychiatric hospitalization as a reason to reject the symptom testimony.

\*       \*       \*       \*       \*

In sum, the undersigned finds that the ALJ supported the rejection of limitations within the medical opinions with substantial evidence. However, the ALJ failed to address relevant portions of Plaintiff's symptom testimony and failed to provide clear and convincing reasons to reject the symptom testimony of record.

///

23

**C. Remedy**

Plaintiff seeks to remand for payment of benefits or alternatively for remand of this case to the Commissioner for further proceedings. (Doc. 16 at 31).  Defendant contends that should the Court find error in the ALJ's analysis, the Court should remand for further proceedings.  (Doc. 18 at 16).  "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court."  *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

In this case, the ALJ erred by failing to offer any clear convincing reasons supported by substantial evidence to reject Plaintiff's symptomology testimony.  Given these errors, the undersigned recommends that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

IV.   **CONCLUSION AND RECOMMENDATION**

For the reasons stated above, IT IS RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (Doc. 16) be GRANTED;

2.  The ALJ's decision be REVERSED;

3.  This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4.  The Clerk of the Court be directed to enter judgment in favor of Plaintiff and against Defendant and to then close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

A party's failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 6, 2026**

_____
UNITED STATES MAGISTRATE JUDGE